1   ANDRÉ BIROTTE JR.
    United States Attorney
2   DENNISE D. WILLETT
    Assistant United States Attorney
3   Chief, Santa Ana Branch Office
    DOUGLAS F. McCORMICK (180415)
4   Assistant United States Attorney
         411 West Fourth Street, Suite 8000
5        Santa Ana, California 92701
         Telephone: (714) 338-3541
6        Facsimile: (714) 338-3564
         E-mail:   doug.mccormick@usdoj.gov
7
    KATHLEEN McGOVERN, Acting Chief
8   CHARLES G. LA BELLA, Deputy Chief
    ANDREW GENTIN, Trial Attorney
9   Fraud Section
    Criminal Division, U.S. Department of Justice
10       1400 New York Avenue, N.W.
         Washington, DC 20005
11       Telephone: (202) 353-3551
         Facsimile: (202) 514-0152
12       E-mail:   andrew.gentin@usdoj.gov

13  Attorneys for Plaintiff
    United States of America
14

15              UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                   SOUTHERN DIVISION

18  UNITED STATES OF AMERICA,      ) SA CR No. 09-00077-JVS
                                   )
19              Plaintiff,         ) PLEA AGREEMENT FOR DEFENDANT
                                   ) FLAVIO RICOTTI
20         v.                      )
                                   )
21  FLAVIO RICOTTI,                )
                                   )
22              Defendant.         )
                                   )
23  _____       )
24

25       1.   This constitutes the plea agreement between FLAVIO

26  RICOTTI ("defendant") and the United States Attorney's Office for

27  the Central District of California ("the USAO") and the United

28  States Department of Justice, Criminal Division, Fraud Section

("the Fraud Section") (the USAO and the Fraud Section are,
collectively, referred to as "the Department of Justice") in the
above-captioned case.   This agreement is limited to the
Department of Justice and cannot bind any other federal, state,
local, or foreign prosecuting, enforcement, administrative, or
regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a)   Give up the right to indictment by a grand jury
and, at the earliest opportunity requested by the Department of
Justice and provided by the Court, appear and plead guilty to a
one-count superseding information in the form attached to this
agreement as Exhibit A or a substantially similar form.

b)   Not contest facts agreed to in this agreement.

c)   Abide by all agreements regarding sentencing
factors contained in this agreement.

d)   Appear for all court appearances, surrender as
ordered for service of sentence, obey all conditions of any bond,
and obey any other ongoing court order in this matter.

e)   Not commit any crime; however, offenses that would
be excluded for sentencing purposes under United States
Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines")
§ 4A1.2(c) are not within the scope of this agreement.

f)   Be truthful at all times with Pretrial Services,
the United States Probation Office, and the Court.

g)   Pay the applicable special assessment at or before
the time of sentencing unless defendant lacks the ability to pay
and submits a completed financial statement (form OBD-500) to the

Department of Justice prior to sentencing.

3.   Defendant further agrees to cooperate fully with the Department of Justice, the Federal Bureau of Investigation ("FBI"), and, as directed by the Department of Justice, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a)   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b)   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the Department of Justice or compelled by subpoena or court order.

c)   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the Department of Justice, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated March 1, 2011 ("the Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE DEPARTMENT OF JUSTICE'S OBLIGATIONS

5.   The Department of Justice agrees to:

3

1          a)   Not contest facts agreed to in this agreement.

2          b)   Abide by all agreements regarding sentencing

3  factors and recommendations contained in this agreement.

4          c)   At the time of sentencing, move to dismiss the

5  underlying indictment.

6          d)   At the time of sentencing, provided that defendant

7  demonstrates, in the exclusive and unreviewable determination of

8  the Department of Justice, an acceptance of responsibility for

9  the offense up to and including the time of sentencing, recommend

10 a two-level reduction in the applicable Sentencing Guidelines

11 offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and,

12 if necessary, move for an additional one-level reduction if

13 available under that section.

14      6.   The Department of Justice further agrees:

15         a)   Not to offer any Cooperation Information as

16 evidence in its case-in-chief in the above-captioned case or any

17 other criminal prosecution that may be brought against defendant

18 by the Department of Justice, or in connection with any

19 sentencing proceeding in any criminal case that may be brought

20 against defendant by the Department of Justice.  Defendant

21 agrees, however, that the Department of Justice may use both

22 Cooperation Information and Plea Information: (1) to obtain and

23 pursue leads to other evidence, which evidence may be used for

24 any purpose, including any criminal prosecution of defendant; (2)

25 to cross-examine defendant should defendant testify, or to

26 provide as substantive evidence in order to rebut any evidence

27 offered, or argument or representation made, by defendant,

28 defendant's counsel, or a witness called by defendant in any

4

trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b)   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c)   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d)   If the Department of Justice determines, in its exclusive and unreviewable judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), the Department of Justice agrees to do the following:

i.   Move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines;

///

5

1             ii.  So move the Court to fix an offense level and

2 corresponding guidelines range at which the low-end of the

3 guidelines range would be equal to or less than the term of

4 imprisonment served by defendant at the time of sentencing; and

5             iii. Recommend a term of imprisonment within this

6 reduced range of no greater than the term of imprisonment served

7 by defendant at the time of sentencing.

8            DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

9     7.  Defendant understands the following:

10          a)  Any knowingly false or misleading statement by

11 defendant may subject defendant to prosecution for false

12 statement, obstruction of justice, and perjury and will

13 constitute a breach by defendant of this agreement.

14          b)  Nothing in this agreement requires the Department

15 of Justice or any other prosecuting, enforcement, administrative,

16 or regulatory authority to accept any cooperation or assistance

17 that defendant may offer, or to use it in any particular way.

18          c)  Defendant cannot withdraw defendant's guilty plea

19 if the Department of Justice does not make a motion pursuant to

20 U.S.S.G. § 5K1.1 for a reduced guideline range or if the

21 Department of Justice makes such a motion and the Court does not

22 grant it or if the Court grants such a Department of Justice

23 motion but elects to sentence above the reduced range.

24          d)  At this time the Department of Justice makes no

25 agreement or representation as to whether any cooperation that

26 defendant has provided or intends to provide constitutes or will

27 constitute substantial assistance.  The decision whether

28 defendant has provided substantial assistance will rest solely

within the exclusive and unreviewable judgment of the Department of Justice.

e)    The Department of Justice's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.    Defendant understands that for defendant to be guilty of the crime charged in count one of the superseding information (a violation of Title 18, United States Code, Section 371), the following must be true: (1) the defendant and at least one other person agreed with each other to commit an offense as charged in the superseding information; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the superseding information.

<u>PENALTIES</u>

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

10.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory.  The court cannot,

and defendant's attorney also may not be able to, advise
defendant fully regarding the immigration consequences of the
felony conviction in this case.  Defendant understands that by
entering a guilty plea defendant waives any claim that unexpected
immigration consequences may render defendant's guilty plea
invalid.

<u>FACTUAL BASIS</u>

13.   Defendant and the Department of Justice agree to the
statement of facts provided below.  Defendant and the Department
of Justice agree that this statement of facts is sufficient to
support a plea of guilty to the charge described in this
agreement and to establish the Sentencing Guidelines factors set
forth in paragraph 15 below but is not meant to be a complete
recitation of all facts relevant to the underlying criminal
conduct or all facts known to either party that relate to that
conduct.

Control Components, Inc. ("CCI") was a Delaware
corporation headquartered in Rancho Santa Margarita,
California, that designed and manufactured service
control valves for use in the nuclear, oil and gas, and
power generation industries worldwide.  CCI sold its
products to both state-owned enterprises and private
companies in approximately thirty countries around the
world.  As a company organized under the laws of a
state of the United States and with its principal place
of business in the United States, CCI was a "domestic
concern" as that term is defined in the Foreign Corrupt
Practices Act ("FCPA"), Title 15, United States Code,

Section 78dd-2(h)(1)(B).

Defendant was CCI's Vice-President of Sales for Europe, Africa, and the Middle East ("EAME") from July 2006 through in or around 2007.  Prior to assuming this position, defendant was CCI's Director of Sales for EAME from approximately 2001 to July 2006.  Prior to that position, defendant was CCI's Director of Power Business for the United States and Europe from 2000 to 2001.  As Director and then Vice-President of Sales for EAME, defendant was responsible for overseeing the marketing and sales of CCI's products to oil and gas, nuclear, and power plant customers in the EAME region.  Defendant is a citizen of Italy.  From 2001 through 2007, defendant was an employee of STI, a company owned by IMI Inc. and located in Italy.  During that time, defendant served as an agent of CCI and thus was an agent of a "domestic concern" within the meaning of the FCPA, Title 15, United States Code, Section 78dd-2(a).

When defendant assumed his position as Director of Sales for EAME, one of CCI's long-standing customers was Saudi Aramco, the state-owned national oil company of the Kingdom of Saudi Arabia.  As a state-owned entity, Saudi Aramco was a department, agency, and instrumentality of a foreign government, within the meaning of the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  The officers and employees of Saudi Aramco, including its Vice-Presidents, Engineering Managers, General Managers, Procurement

1    Managers, and Purchasing Officers, were "foreign

2    officials" within the meaning of the FCPA, Title 15,

3    United States Code, Section 78dd-2(h)(2)(A).

4    CCI's Payment Offer to a Saudi Aramco Employee

5         In 2003, CCI bid on a contract for the sale of 34

6    Khuff choke valves to Saudi Aramco.  At the time this

7    bid was made, defendant knew that CCI had a pre-

8    existing relationship with an employee at Saudi Aramco.

9    Defendant further knew that this relationship included

10   the payment of commissions for influence in CCI's favor

11   in the awarding of contracts and/or the setting of

12   technical specifications for contracts.  Others at CCI,

13   including Stuart Carson and Paul Cosgrove, were aware

14   of the existence and nature of CCI's relationship with

15   this Saudi Aramco employee.  Defendant agreed and

16   conspired with these other CCI employees to use the

17   employee at Saudi Aramco to assist in obtaining

18   business for CCI with Saudi Aramco.

19        During the bidding process for the Khuff choke

20   valve contract, defendant was informed by a CCI

21   employee that the employee at Saudi Aramco would expect

22   a 3% commission (approximately $43,645) from CCI if CCI

23   was awarded the contract.  Defendant agreed that the

24   commission should be offered to the Saudi Aramco

25   employee and urged a CCI employee to be sure that the

26   Saudi Aramco employee provided the anticipated

27   assistance in obtaining the contract for CCI.  At the

28   time defendant did so, he knew that making such a

                              11

payment to an employee of Saudi Aramco for the purpose
of obtaining Saudi Aramco's business was unlawful.

CCI's Offer and Payment to an Employee of Company 5

In 2002, CCI bid on a contract for the sale of
choke valves to Company 5, a private company, for the
Ras Laffan project in Qatar.  During the bidding
process, one of defendant's subordinates informed
defendant that a Company 5 employee, referred to by CCI
employees as "Mr. X," was willing to provide CCI
confidential information about the bids of CCI's
competitors and to exercise influence in CCI's favor in
the awarding of the contract in exchange for a 1.5%
commission.  In or around January 2002, defendant
assisted in offering the commission to Mr. X by asking
another CCI employee to confirm with Mr. X that his
commission would be 1.5%.  At the time defendant made
this request, he knew that offering such a payment to a
Company 5 employee for the purpose of obtaining Company
5's business was unlawful.  In making this request,
defendant agreed and conspired with other employees of
CCI to pay Mr. X a commission so that Mr. X would
assist in obtaining business for CCI with Company 5.

After CCI successfully obtained a contract from
Company 5 to supply choke valves for the Ras Laffan
project, on or about February 28, 2005, CCI paid Mr. X
a portion of the promised commission by wire
transferring $11,800 from CCI's bank account in
California to an account at Qatar National Bank.

1    In reference to the transactions and conduct

2    described above, defendant did not personally gain any

3    profit or other advantage.  Moreover, defendant did not

4    conceal anything from or mislead anyone at CCI.  The

5    practice of offering commissions such as those

6    described above was open and transparent at CCI and

7    encouraged by CCI management.  Defendant believed that

8    it was necessary to offer such commissions to ensure

9    that CCI, instead of its competitors, obtained

10   contracts.  Defendant also believed that it was widely

11   known in the industry that CCI and its competitors

12   offered such payments to obtain contracts.

13                    SENTENCING FACTORS

14        14.  Defendant understands that in determining defendant's

15   sentence the Court is required to consider the factors set forth

16   in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence

17   and sentencing range established under the Sentencing Guidelines.

18   Defendant understands that the Sentencing Guidelines are advisory

19   only, that defendant cannot have any expectation of receiving a

20   sentence within the Sentencing Guidelines range, and that after

21   considering the Sentencing Guidelines and the other § 3553(a)

22   factors, the Court will be free to exercise its discretion to

23   impose any sentence it finds appropriate up to the maximum set by

24   statute for the crime of conviction.

25   ///

26   ///

27   ///

28        15.  Defendant and the Department of Justice agree to the

13

following applicable Sentencing Guidelines factors:[1]

**FCPA Conspiracy**

Base Offense Level    :    12          U.S.S.G. § 2C1.1(a)(2)

Specific Offense
Characteristics--

Value/Benefit         :    +6          U.S.S.G. § 2C1.1(b)(2)[2]

FCPA Conspiracy
Offense Level         :    18

**Travel Act Conspiracy**

Base Offense Level    :    8           U.S.S.G. § 2B4.1(a)

Specific Offense
Characteristics--

Value/Benefit         :    +14         U.S.S.G. § 2B4.1(b)(1)[3]

Travel Act Conspiracy
Offense Level         :    22

**Combined Offense**

---

[1] Pursuant to U.S.S.G. § 1B1.2(d), the parties agree that the Court should treat defendant's conviction on count one of the superseding information as if the defendant had been convicted of separate counts of conspiracy to violate the FCPA and the Travel Act.

[2] The parties agree that the value of the proposed payment ($43,645) contemplated in connection with the FCPA violation described in the superseding information is the most appropriate amount to be considered under U.S.S.G. § 2C1.1(b)(2).

[3] The parties agree that, for purposes of evaluating the improper benefit to CCI from defendant's conduct, the Court should consider only the transaction with Company 5 referenced in this plea agreement and the transaction with Company 4 referenced in Count 13 of the underlying Indictment in this matter (hereafter "Company 4"). The parties further agree that the total benefit conferred on CCI as a result of CCI's payments to employees of Companies 4 and 5 for these transactions is more than $400,000, but less than $1,000,000, resulting in a 14-level increase in the offense level pursuant to U.S.S.G. § 2B1.4(b)(1).

14

| **Level** | : | 22 | U.S.S.G. § 3D1.2(d) |
|---|---|---|---|
| | | | U.S.S.G. § 3D1.3(b) |

Adjustments--

| Acceptance of Responsibility | : | -3 | U.S.S.G. § 3E1.1 |
|---|---|---|---|

Total Offense Level :    19

The Department of Justice will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2) are met.   Subject to paragraph 29 below, defendant and the Department of Justice agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures, other than a downward departure pursuant to § 5K1.1, relating to the offense level be imposed.   Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the Department of Justice were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the Department of Justice, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the Department of Justice would be free to seek the enhancement set forth in that section.

16.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.   With respect to count one of the superseding information, defendant and the Department of Justice agree that,

15

taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the relevant Sentencing Guidelines effective on November 1, 2010 represent a reasonable basis for the Court to determine defendant's sentence in this case, and that defendant should be sentenced in accordance with the Sentencing Guidelines. Therefore, subject to paragraph 29 below, defendant and the Department of Justice agree not to argue, either orally or in writing, that the Court (a) not follow the Sentencing Guidelines in imposing sentence; (b) impose a sentence not in accordance with the Sentencing Guidelines; or (c) impose a term of imprisonment outside the Sentencing Guidelines range, as adjusted by any downward departure of no greater than recommended by the Department of Justice pursuant to U.S.S.G. § 5K1.1.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a)  The right to persist in a plea of not guilty.

b)  The right to a speedy and public trial by jury.

c)  The right to the assistance of an attorney at trial, including the right to have the Court appoint an attorney to represent defendant at trial.  Defendant understands, however, that, despite defendant's guilty plea, defendant retains the right to be represented by an attorney -- and, if necessary, to have the Court appoint an attorney if defendant cannot afford one -- at every other stage of the proceeding.

d)  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1          e)    The right to confront and cross-examine witnesses

2    against defendant.

3          f)    The right to testify on defendant's own behalf and

4    present evidence in opposition to the charges, including calling

5    witnesses and subpoenaing those witnesses to testify.

6          g)    The right not to be compelled to testify, and, if

7    defendant chose not to testify or present evidence, to have that

8    choice not be used against defendant.

9          h)    Any and all rights to pursue any affirmative

10   defenses, Fourth Amendment or Fifth Amendment claims, and other

11   pretrial motions that have been filed or could be filed.

12                        WAIVER OF JURISDICTION

13        19.   As to the transactions with Companies 4 and 5

14   referenced in this plea agreement, defendant has been fully

15   advised by defendant's attorney regarding applicable

16   jurisdictional requirements imposed by California Penal Code §§

17   27, 778, 778a, and 778b, and hereby knowingly, voluntarily, and

18   intelligently waives, relinquishes, and gives up:  (a) any right

19   that defendant might have not to be convicted of violating 18

20   U.S.C. § 1952, based on the transaction involving Company 5, or

21   to exclude the transaction involving Company 4 from relevant

22   conduct for sentencing purposes due to a lack of California

23   jurisdiction over such conduct; and (b) any defense, claim, or

24   argument defendant could raise or assert that conviction or

25   sentencing based on these two transactions is barred due to a

26   lack of California jurisdiction

27               WAIVER OF STATUTE OF LIMITATIONS

28        20.   Having been fully advised by defendant's attorney

                              17

regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the superseding information alleging those offenses; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offenses to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

WAIVER OF APPEAL OF CONVICTION

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided

18

it is within the statutory maximum; and (e) any of the following
conditions of probation or supervised release imposed by the
Court: the standard conditions set forth in General Orders 318,
01-05, and/or 05-02 of this Court; the drug testing conditions
mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol
and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.    The Department of Justice agrees that, provided (a) all
portions of the sentence are at or below the statutory maximum
specified above, (b) the Court calculates the offense level to be
used for selecting a sentencing range under the Sentencing
Guidelines to be 19 or above prior to any departure under
U.S.S.G. § 5K1.1, and (c) the Court imposes a term of
imprisonment within or above the range corresponding to the
offense level calculated after any downward departure under
U.S.S.G. § 5K1.1 and the criminal history category calculated by
the Court, the Department of Justice gives up its right to appeal
any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

24.    Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and
succeeds in withdrawing defendant's guilty plea on any basis
other than a claim and finding that entry into this plea
agreement was involuntary, then (a) the Department of Justice
will be relieved of all of its obligations under this agreement,
including in particular its obligations regarding the use of
Cooperation Information; (b) in any investigation, criminal
prosecution, or civil, administrative, or regulatory action,
defendant agrees that any Cooperation Information and any

evidence derived from any Cooperation Information shall be
admissible against defendant, and defendant will not assert, and
hereby waives and gives up, any claim under the United States
Constitution, any statute, or any federal rule, that any
Cooperation Information or any evidence derived from any
Cooperation Information should be suppressed or is inadmissible;
and (c) should the Department of Justice choose to pursue any
charge that was either dismissed or not filed as a result of this
agreement, then (i) any applicable statute of limitations will be
tolled between the date of defendant's signing of this agreement
and the filing commencing any such action; and (ii) defendant
waives and gives up all defenses based on the statute of
limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing
this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25.  Defendant agrees that if the count of conviction is
vacated, reversed, or set aside, both the Department of Justice
and defendant will be released from all their obligations under
this agreement.

## EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and
execution of all required certifications by defendant,
defendant's counsel, and an attorney for the Department of
Justice.

## BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after

the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Department of Justice may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the Department of Justice to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Department of Justice in writing.  If the Department of Justice declares this agreement breached, and the Court finds such a breach to have occurred, then:

a)   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b)   The Department of Justice will be relieved of all its obligations under this agreement; in particular, the Department of Justice: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the Department of Justice would otherwise have been

1   obligated to dismiss pursuant to this agreement; and (iii) will

2   no longer be bound by any agreement regarding the use of

3   Cooperation Information and will be free to use any Cooperation

4   Information in any way in any investigation, criminal

5   prosecution, or civil, administrative, or regulatory action.

6          c)   The Department of Justice will be free to

7   criminally prosecute defendant for false statements, obstruction

8   of justice, and perjury based on any knowingly false or

9   misleading statement by defendant.

10          d)   In any investigation, criminal prosecution, or

11   civil, administrative, or regulatory action: (i) defendant will

12   not assert, and hereby waives and gives up, any claim that any

13   Cooperation Information was obtained in violation of the Fifth

14   Amendment privilege against compelled self-incrimination; and

15   (ii) defendant agrees that any Cooperation Information and any

16   Plea Information, as well as any evidence derived from any

17   Cooperation Information or any Plea Information, shall be

18   admissible against defendant, and defendant will not assert, and

19   hereby waives and gives up, any claim under the United States

20   Constitution, any statute, Rule 410 of the Federal Rules of

21   Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,

22   or any other federal rule, that any Cooperation Information, any

23   Plea Information, or any evidence derived from any Cooperation

24   Information or any Plea Information should be suppressed or is

25   inadmissible.

26      28.   Following the Court's finding of a knowing breach of

27   this agreement by defendant, should the Department of Justice

28   choose to pursue any charge that was either dismissed or not

22

1  filed as a result of this agreement, then:

2          a)    Defendant agrees that any applicable statute of

3  limitations is tolled between the date of defendant's signing of

4  this agreement and the filing commencing any such action.

5          b)    Defendant waives and gives up all defenses based

6  on the statute of limitations, any claim of pre-indictment delay,

7  or any speedy trial claim with respect to any such action, except

8  to the extent that such defenses existed as of the date of

9  defendant's signing this agreement.

10              COURT AND PROBATION OFFICE NOT PARTIES

11         29.   Defendant understands that the Court and the United

12  States Probation Office are not parties to this agreement and

13  need not accept any of the Department of Justice's sentencing

14  recommendations or the parties' agreements to facts or sentencing

15  factors.

16         30.   Defendant understands that both defendant and the

17  Department of Justice are free to: (a) supplement the facts by

18  supplying relevant information to the United States Probation

19  Office and the Court, (b) correct any and all factual

20  misstatements relating to the Court's Sentencing Guidelines

21  calculations, and (c) argue on appeal and collateral review that

22  the Court's Sentencing Guidelines calculations are not error,

23  although each party agrees to maintain its view that the

24  calculations in paragraph 15 are consistent with the facts of

25  this case.  While this paragraph permits both the Department of

26  Justice and defendant to submit full and complete factual

27  information to the United States Probation Office and the Court,

28  even if that factual information may be viewed as inconsistent

                                23

1  with the facts agreed to in this agreement, this paragraph does

2  not affect defendant's and the Department of Justice's

3  obligations not to contest the facts agreed to in this agreement.

4      31.  Defendant understands that even if the Court ignores

5  any sentencing recommendation, finds facts or reaches conclusions

6  different from those agreed to, and/or imposes any sentence up to

7  the maximum established by statute, defendant cannot, for that

8  reason, withdraw defendant's guilty plea, and defendant will

9  remain bound to fulfill all defendant's obligations under this

10  agreement.  Defendant understands that no one -- not the

11  prosecutor, defendant's attorney, or the Court -- can make a

12  binding prediction or promise regarding the sentence defendant

13  will receive, except that it will be within the statutory

14  maximum.

15              <u>NO ADDITIONAL AGREEMENTS</u>

16      32.  Defendant understands that, except as set forth herein,

17  there are no promises, understandings, or agreements between the

18  Department of Justice and defendant or defendant's attorney, and

19  that no additional promise, understanding, or agreement may be

20  entered into unless in a writing signed by all parties or on the

21  record in court.

22       <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

23      33.  The parties agree that this agreement will be

24  considered part of the record of defendant's guilty plea hearing

25  ///

26  ///

27  ///

28  ///

24

1  as if the entire agreement had been read into the record of the

2  proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

5
   ANDRÉ BIROTTE JR.
6  United States Attorney

7

8  _____          4/28/2011
   DOUGLAS F. McCORMICK              Date
   Assistant United States Attorney
9
   FRAUD SECTION, CRIMINAL DIVISION
10 U.S. DEPARTMENT OF JUSTICE

11                                   4/28/2011

12 _____          Date
   CHARLES G. LA BELLA
13 Deputy Chief

14 _____          4/28/11
   ANDREW GENTIN                     Date
15 Trial Attorney

16

17 _____          _____
   FLAVIO RICOTTI                    Date
18 Defendant

19

20 _____          _____
   MARC S. HARRIS                    Date
   JEAN M. NELSON
21 Attorneys for Defendant
   FLAVIO RICOTTI

22

23

24

25

26

27

28

                           25

1  as if the entire agreement had been read into the record of the

2  proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

5
   ANDRÉ BIROTTE JR.

6  United States Attorney

7

8  _____            _____
   DOUGLAS F. McCORMICK                   Date
   Assistant United States Attorney

9
   FRAUD SECTION, CRIMINAL DIVISION

10 U.S. DEPARTMENT OF JUSTICE

11

12 _____            _____
   CHARLES G. LA BELLA                    Date
   Deputy Chief

13

14 _____            _____
   ANDREW GENTIN                          Date

15 Trial Attorney

16

17 _____            _____
   FLAVIO RICOTTI                         April 28, 2011
   Defendant                              Date

18

19 _____            _____
   MARC S. HARRIS                         April 28, 2011

20 JEAN M. NELSON                         Date
   Attorneys for Defendant

21 FLAVIO RICOTTI

22

23

24

25

26

27

28

                                   25

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Italian, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____            April 28, 2011
FLAVIO RICOTTI                        Date
Defendant

26

CERTIFICATION OF INTERPRETER

I, _____, am fluent in the written and spoken English and Italian languages.  I accurately translated this entire agreement from English into Italian to defendant FLAVIO RICOTTI on this date.

_____          4-28-11
Interpreter                        Date

27

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2      I am Flavio Ricotti's attorney.  I have carefully and

3 thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of his rights, of

5 possible pretrial motions that might be filed, of possible

6 defenses that might be asserted either prior to or at trial, of

7 the sentencing factors set forth in 18 U.S.C. § 3553(a), of

8 relevant Sentencing Guidelines provisions, and of the

9 consequences of entering into this agreement.  To my knowledge:

10 no promises, inducements, or representations of any kind have

11 been made to my client other than those contained in this

12 agreement; no one has threatened or forced my client in any way

13 to enter into this agreement; my client's decision to enter into

14 this agreement is an informed and voluntary one; and the factual

15 basis set forth in this agreement is sufficient to support my

16 client's entry of a guilty plea pursuant to this agreement.

17

18 _____          April 28, 2011
   MARC S. HARRIS                     Date
19 JEAN M. NELSON
   Attorney for Defendant
20 FLAVIO RICOTTI

21

22

23

24

25

26

27

28

28